INMAN, Judge.
*629 In light of this Court's recent decision in State v. Grady , --- N.C. App. ----, 817 S.E.2d 18, COA17-12, 2018 WL 2206344 (15 May 2018) (" Grady II "),[1] *630 absent any evidence that satellite-based monitoring ("SBM") is effective to protect the public from sex offenders, the trial court erred in imposing SBM on a sex offender for thirty years. We therefore reverse the trial court's order.
I. FACTUAL AND PROCEDURAL BACKGROUND
On 29 January 2004 in Craven County Superior Court, before the Honorable Benjamin G. Alford, Thomas Earl Griffin ("Defendant") proffered an Alford plea, as a part of a negotiated plea agreement, to the charge of first-degree sex offense with a child. As a *338 part of the plea agreement, the court dismissed a charge of taking indecent liberties with a child.
The State's recitation of the facts during the plea hearing stated that Defendant was the live-in boyfriend of the victim's mother. The victim, who was eleven years old at the time of the initial disclosure, stated that Defendant had "been messing with her for the past three years," describing penile and digital penetration, as well as penetration with the use of a foreign object. Defendant made a full confession, admitting all of what the victim reported. The court sentenced Defendant to a prison term of 144 to 182 months[2] and recommended that while incarcerated Defendant participate in the SOAR program (a sex offender treatment program).
Defendant was released from prison eleven years later, in June 2015. On 29 September 2015, the Department of Public Safety informed Defendant that his was a reportable sex offense as defined by N.C. Gen. Stat. § 14-208.6(4) and that he could be required to enroll in an SBM program pursuant to N.C. Gen. Stat. § 14-208.40(a)(2), as determined by a court. Defendant was instructed to appear for a "bring-back" hearing to determine whether he would be required to participate in an SBM program.
The bring-back hearing was conducted on 16 August 2016, in Craven County Superior Court, again before Judge Alford. The State introduced into evidence a "Revised STATIC-99 Coding Form" ("Static-99"), an actuarial report designed to estimate the probability of sex offender recidivism, which placed Defendant in the "moderate-low" category, above the "low" and below the "moderate-high" and "high" risk categories.[3]
*631 The State also called as a witness Probation and Parole Officer Caitlin Allen, who supervised Defendant and other sex offenders. Based on her review of Defendant's prison records and her own supervision, Officer Allen testified that while in prison, Defendant had not completed the SOAR program and that, since his release from prison, Defendant had not committed any criminal offenses or violated the terms of his probation, including restrictions on his location.
Officer Allen also described the physical dimensions of the SBM tracking device, how it is worn, and its general function. The State presented no evidence regarding how information gathered through SBM of Defendant would be used. The State presented no evidence regarding whether, or to what degree, SBM would be effective in protecting the public from Defendant committing another sex offense.
The prosecutor stated her belief that Defendant could be ordered to participate in an SBM program for a term of years, but not life, and "ask[ed] that [the court] find that this was a-that the Satellite Based Monitoring [was] a reasonable search." The prosecutor noted that the victim was a young child, eighteen years younger than Defendant, and that by virtue of his living arrangement with the victim's mother, Defendant held a position of trust in the victim's household. In response, counsel for Defendant argued that based on his "moderate to low level-level of risk" and his compliance with all terms of his probation, "this level of intrusion" was not warranted. The trial court took the matter under advisement without commenting on the merits of either the State's or Defendant's arguments.
On 1 September 2016, the trial court entered a form order finding that Defendant had been convicted of a reportable offense as defined by N.C. Gen. Stat. § 14-208.6 and involving the physical, mental, or sexual abuse of a minor. The order also found that Defendant was not classified as a sexually violent predator, was not a recidivist, and was not convicted of an aggravated offense.
*339 The trial court also entered, on an attached form, the following additional findings and a conclusion of law:
1. The defendant failed to participate in and[/]or complete the SOAR program.
2. The defendant took advantage of the victim's young age and vulnerability: the victim was 11 years old the defendant was 29 years old.
3. The defendant took advantage of a position of trust; the defendant was the live-in boyfriend of the victim's *632 mother. The family had resided together for at least four years and [defendant] had a child with the victim's mother.
4. Sexual abuse occurred over a three year period of time.
The court has weighed the Fourth Amendment right of the defendant to be free from unreasonable searches and seizures with the publics [sic] right to be protected from sex offenders and the court concludes that the publics [sic] right of protection outweighs the "de minimis" intrusion upon the defendant's Fourth Amendment rights.
Based on these findings and conclusion, the trial court ordered Defendant to register as a sex offender and enroll in SBM for a period of thirty years.
Defendant appeals.
II. ANALYSIS
Defendant does not challenge being ordered to register as a sex offender,[4] but argues that the trial court violated his Fourth Amendment rights by ordering him to submit to continuous SBM for thirty years. After careful review of the record and applicable law, we are compelled to agree.
A. Preservation of Issue
"Our appellate courts will only review constitutional questions raised and passed upon at trial." State v. Mills , 232 N.C. App. 460, 466, 754 S.E.2d 674, 678 (2014) (citations omitted).
The State argues that Defendant waived the sole issue he raises on appeal-the constitutionality of the order directing him to enroll in the SBM program-asserting "Defendant made no Fourth Amendment challenge either before or at the SBM determination hearing." We reject this argument because the question of whether Defendant's enrollment in an SBM program constituted a reasonable search was directly raised and passed upon by the trial court.
During the bring-back hearing, the prosecutor "ask[ed] that [the court] find ... Satellite Based Monitoring [was] a reasonable search." In response, Defendant argued that "this level of intrusion" was not *633 warranted. In its order directing Defendant to enroll in a SBM program, the trial court specifically addressed "the Fourth Amendment right of ... defendant to be free from unreasonable searches ... [and] the publics [sic] right to be protected" and concluded that the public's right to be protected outweighed Defendant's privacy right.
We hold that Defendant's appeal presents a constitutional question raised and passed upon by the trial court, see id. at 466, 754 S.E.2d at 678, and is now properly before this Court.
B. Standard of Review
In reviewing [the superior court's order], we are strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.
State v. Williams , 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted). This Court reviews "the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." State v. Singleton , 201 N.C. App. 620, 626, 689 S.E.2d 562, 566 (2010) (citation and quotation marks omitted). "We will therefore review the trial court's order to ensure that the determination that 'defendant requires *340 the highest possible level of supervision and monitoring' 'reflects a correct application of law to the facts found.' " State v. Kilby , 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009) (citations and brackets omitted).
Williams , Singleton , Kilby , and a plethora of other decisions regarding SBM were rendered by this Court and the North Carolina Supreme Court prior to the decision by the United States Supreme Court in Grady v. North Carolina , 575 U.S. ----, ----, 135 S.Ct. 1368, 1370-71, 191 L.Ed. 2d 459, 462 (2015) (per curiam) (" Grady I "), which held that North Carolina's SBM program effects a search subject to protections of the Fourth Amendment of the United States Constitution.
"The standard of review for alleged violations of constitutional rights is de novo." State v. Graham , 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).
C. Fourth Amendment to the United States Constitution
The Fourth Amendment to the United States Constitution sets forth "[t]he right of the people to be secure in their persons, houses, papers, *634 and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." State v. Grice , 367 N.C. 753, 756, 767 S.E.2d 312, 315 (2015).
Grady I did not invalidate all SBM orders, noting that "[t]he Fourth Amendment prohibits only unreasonable searches." Grady I , 575 U.S. at ----, 135 S.Ct. at 1371, 191 L.Ed. 2d at 462 (emphasis in original). Grady I vacated the SBM order and remanded the case to the trial court to determine whether SBM was reasonable based on the totality of the circumstances, "including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. at ----, 135 S.Ct. at 1371, 191 L.Ed. 2d at 462.
Following the defendant's appeal from a trial court hearing on remand from Grady I , this Court in Grady II established new criteria for court orders allowing the government to track the location of sex offenders by SBM. Grady II , --- N.C. App. at ----, 817 S.E.2d at 23. Following earlier decisions by this Court, Grady II held that the State bears the burden of proving that SBM is reasonable. Id. at ---, 817 S.E.2d at 23 ; see also State v. Blue , 246 N.C. App. 259, 265, 783 S.E.2d 524, 527 (2016). And, for the first time in any North Carolina appellate court decision regarding SBM, Grady II held that absent evidence that SBM is effective in serving the State's compelling interest in protecting the public from sex offenders, the State failed to meet its burden to prove that SBM is reasonable as required by the Fourth Amendment. Grady II , --- N.C. App. at ----, 817 S.E.2d at 23.
D. Evidence that SBM is Effective to Protect the Public from Sex Offenders
Following the United States Supreme Court's remand order in Grady I and a new SBM hearing in the trial court, this Court held in Grady II that the trial court violated the Fourth Amendment rights of the defendant in that case, a recidivist sex offender, by ordering lifetime SBM absent any evidence that SBM is effective to protect the public against sex offenses. --- N.C. App. at ----, 817 S.E.2d at 23. This Court noted that although the SBM program had been in effect for approximately a decade prior to the hearing on remand from the United States Supreme Court, "the State failed to present any evidence of its efficacy in furtherance of the State's undeniably legitimate interests" and held that in the absence of evidence regarding the efficacy of SBM, "we are compelled to conclude that the State failed to carry its burden" of proving that SBM was reasonable in that case. Id . at ----, 817 S.E.2d at 23.
*635 In this case, as in Grady II , the State presented no evidence regarding the efficacy of the SBM program. The State argues that it was unnecessary to present such evidence in order to establish its interest in protecting the public from sex offenders[5] because "one *341 cannot discount the possibility that an offender's awareness his location is being monitored does in fact deter him from committing additional offenses." The State further relies on decisions from other jurisdictions stating that SBM curtails sex offender recidivism.
Our dissenting colleague, who also dissented in Grady II , cites the State's Memorandum in Support of Reasonableness of Satellite Based Monitoring submitted to the trial court, noting "the memo outlines empirical evidence and argument as to the statistical likelihood that a sex offender would be a recidivist." The memorandum, however, cited only other court decisions, not evidence, and it did not attach empirical or statistical reports. This approach has been rejected by the United States Court of Appeals for the Fourth Circuit in a decision regarding the constitutionality of premises restrictions for sex offenders:
The State tries to overcome its lack of data, social science or scientific research, legislative findings, or other empirical evidence with a renewed appeal to anecdotal case law, as well as to "logic and common sense." But neither anecdote, common sense, nor logic, in a vacuum, is sufficient to carry the State's burden of proof.
Doe v. Cooper , 842 F.3d 833, 846 (4th Cir. 2016) (citations omitted).
Decisions from other jurisdictions relied upon by our dissenting colleague-and by the State-holding that SBM is generally regarded as effective in protecting the public from sex offenders are not persuasive in light of this Court's binding decision in Grady II that the State must present some evidence to carry its burden of proving that SBM actually serves that governmental interest.[6]
*636 Our dissenting colleague asserts that requiring the State to introduce evidence that SBM is effective in every SBM hearing, regardless of evidence regarding other relevant circumstances, exceeds the holding of the United States Supreme Court in Grady I . However, we are bound by this Court's decision in Grady II and cannot hold otherwise. See In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).
Our dissenting colleague also asserts that our decision exceeds the holding in Grady II by requiring, as a threshold in every SBM case, evidence to support a finding by the trial court that SBM will serve the government purpose of curbing recidivism. But following the reasoning of this Court in Grady II , unless SBM is found to be effective to actually serve the purpose of protecting against recidivism by sex offenders, it is impossible for the State to justify the intrusion of continuously tracking an offender's location for any length of time, much less for thirty years.
As noted by this Court in Grady II , and by the United States Supreme Court, the continuous and dynamic location data gathered by SBM is far more intrusive than the static information gathered as a result of sex offender registration. " 'GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations.' " Grady II , --- N.C. App. at ----, 817 S.E.2d at 23 (quoting United States v. Jones , 565 U.S. 400, 415, 132 S.Ct. 945, 955, 181 L.Ed.2d 911, 924 (2012) (Sotomayor, J., concurring) ). In one aspect, the intrusion of SBM on Defendant in this case is greater than the intrusion imposed in Grady II , because unlike an order for lifetime SBM, which is subject to periodic challenge and review, an order imposing SBM for a period of years is not subject to later review by the trial court. See N.G. Gen. Stat. § 14-208.43 (removal procedure available only for lifetime SBM participants).
*342 We also are bound by this Court's holding in Grady II that when the State has presented no evidence that could possibly support a finding necessary to impose SBM, the appropriate disposition is to reverse the trial court's order rather than to vacate and remand the matter for re-hearing. --- N.C. App. at ----, 817 S.E.2d at 23 (emphasizing "the State will have only one opportunity to prove that SBM is a reasonable search of the defendant") (citing State v. Greene , --- N.C. App. ----, ----, 806 S.E.2d 343, 345 (2017) ).
E. Defendant's Current Threat of Reoffending
This Court in Grady II also held that a trial court cannot impose SBM without "sufficient record evidence to support the trial court's conclusion that SBM is reasonable as applied to this particular defendant ."
*637 --- N.C. App. at ----, 817 S.E.2d at 21 (emphasis in original). The Court "reiterate[d] the continued need for individualized determinations of reasonableness at Grady hearings." Id . at ----, 817 S.E.2d at 23.
Here, unlike in Grady II , the State introduced in evidence Defendant's Static-99 risk factor assessment, which reflected that he was a "moderate-low risk" for reoffending. In addition, the State presented evidence, and the trial court found as a fact, that Defendant had violated a position of trust in committing his offense and had failed to complete or participate in a court ordered SOAR program for sex offenders while incarcerated. The SBM order did not reflect in any finding or conclusion whether the trial court determined that Defendant's betrayal of trust or failure to complete or participate in SOAR increased his likelihood of recidivism.
Pre- Grady I , this Court held that a Static-99 moderate-low risk assessment, without additional evidence independent of factors considered in the assessment, was insufficient to support the imposition of SBM on a sex offender. Kilby , 198 N.C. App. at 370, 679 S.E.2d at 434 ; State v. Thomas , 225 N.C. App. 631, 634, 741 S.E.2d 384, 387 (2013) (holding that statutory language allowing the trial court to make additional findings is to permit the court to consider factors not part of the Static-99 assessment).
In light of our holding that the State failed to prove that SBM is a reasonable search compliant with the Fourth Amendment because it presented no evidence that the SBM program is effective to serve the State's interest in protecting the public against sex offenders, we do not reach the issue of whether the trial court's order or the State's evidence presented regarding Defendant's individual threat of reoffending meets the minimum constitutional standard required by Grady I and Grady II .
CONCLUSION
We hold that because the State failed to present any evidence that SBM is effective to protect the public from sex offenders, this Court's decision in Grady II compels us to reverse the trial court's order requiring Defendant to enroll in SBM for thirty years.
REVERSED.
Judge DAVIS concurs.
Judge BRYANT dissents in separate opinion.

In the interest of clarity, we refer to this cited decision as Grady II and refer to the United State Supreme Court's preceding and related decision as Grady I .

First-degree sex offense is a B1 felony punishable by a maximum sentence of life imprisonment without parole for offenders with at least a Level V prior record level. Defendant, whose only prior convictions were for driving without a license and registration and fishing without a license, was a Level I offender. See N.C. Gen. Stat. § 15A-1340.17 (2017).

Though unchallenged before the trial court, Defendant argues on appeal that his Static-99 was miscalculated and that his risk category should have been "low" risk.

As a sex offender, Defendant is subject to a reporting requirement where by statute he must maintain registration with the sheriff of the county in which he resides. See N.C. Gen. Stat. § 14-208.7(a) (2017).

The State also argues that North Carolina's SBM program should be evaluated as a "special needs" program. But the record reflects that the State failed to present this argument to the trial court. "Since the State failed to advance this constitutional argument below, it is waived." Grady II , --- N.C. App. at ----, 817 S.E.2d at 21.

Also, in contrast to the trial court's order reviewed in Grady II , which relied upon some of those decisions, the trial court's order in the case now before us did not refer to any case authorities, or empirical or statistical reports referenced in case authorities, or otherwise. Nor did the trial court indicate in the SBM hearing that it had reviewed the State's legal memorandum or relied upon any of the authorities cited therein.