IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-386-2

 Filed: 18 February 2020

Craven County, No. 03 CRS 53794

STATE OF NORTH CAROLINA

 v.

THOMAS EARL GRIFFIN, Defendant.

 Appeal by Defendant from order entered 1 September 2016 by Judge Benjamin

G. Alford in Craven County Superior Court. Heard in the Court of Appeals 19

September 2017, and opinion filed 7 August 2018. Remanded to this Court by order

of the North Carolina Supreme Court for further consideration in light of State v.

Grady, 372 N.C. 509, 831 S.E.2d 542 (2019). Heard in this Court on remand on 8

January 2020.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph
 Finarelli, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R.
 Grant, for Defendant-Appellant.

 INMAN, Judge.

 Following the Supreme Court of North Carolina’s decision in State v. Grady,

372 N.C. 509, 831 S.E.2d 542 (2019) (Grady III), we hold that the trial court’s order

imposing satellite based monitoring (“SBM”) of a sex offender for thirty years,
 STATE V. GRIFFIN

 Opinion of the Court

considering the totality of the circumstances of this case, is unreasonable and violates

the Fourth Amendment to the United States Constitution.

 In State v. Griffin, ___ N.C. App. ___, ___, 818 S.E.2d 336, 342 (2018) (Griffin

I), this Court held that the State failed to demonstrate the reasonableness of a

warrantless search of Defendant Thomas Earl Griffin (“Defendant”) through

imposition of SBM for a term of thirty years in violation of the Fourth Amendment to

the United States Constitution. Our holding was based on this Court’s decision in

State v. Grady, ___ N.C. App. ___, 817 S.E.2d 18 (2018) (“Grady II”), holding that

lifetime SBM was unconstitutional as applied to a recidivist defendant because the

State “failed to present any evidence of [SBM’s] efficacy in furtherance of the State’s

undeniably legitimate interests.” ___ N.C. App. at ___, 817 S.E.2d at 27.

 After Griffin I was filed, the Supreme Court of North Carolina modified and

affirmed Grady II, holding in Grady III that lifetime SBM was unconstitutional as

applied to Mr. Grady and all defendants who were not on probation or post-release

supervision but subject to lifetime SBM solely on the basis of recidivism. Grady III,

372 N.C. at 591, 831 S.E.2d at 572. Griffin I was then remanded to this Court by

order of the Supreme Court “for further consideration in light of . . . [Grady III].”

 After careful review following the decision in Grady III, supplemental briefing,

and oral argument, we again hold that the imposition of SBM under N.C. Gen. Stat.

 -2-
 STATE V. GRIFFIN

 Opinion of the Court

§ 14-208.40(a)(2) per the trial court’s order is unconstitutional as applied to

Defendant.1 We again reverse the trial court’s order.

 I. FACTUAL AND PROCEDURAL HISTORY

 The facts of this case are fully described in Griffin I. ___ N.C. App. at ___, 818

S.E.2d at 337-39. However, since those facts do not render Grady III entirely

dispositive of this appeal and the resolution of an as-applied challenge “is strongly

influenced by the facts in a particular case[,]” State v. Packingham, 368 N.C. 380,

393, 777 S.E.2d 738, 749 (2015), rev’d and remanded on other grounds, 582 U.S. ___,

198 L. Ed. 2d 273 (2017), we recite pertinent details.

 In 2004, Defendant entered an Alford plea to one count of first-degree sex

offense with a child. Griffin I, ___ N.C. App. at ___, 818 S.E.2d at 337. At sentencing,

Defendant admitted to the digital and penile penetration of his girlfriend’s minor

daughter over the course of three years. Id. at ___, 818 S.E.2d at 338. The trial court

sentenced Defendant to imprisonment for 144 to 182 months and recommended the

completion of SOAR, a sex offender treatment program. Id.

 Eleven years after his conviction, in 2015, Defendant was released from prison

on a five-year term of post-release supervision. Id. Three months later, the State

sought SBM of Defendant under N.C. Gen. Stat. § 14-208.40(a)(2), as he had been

 1 At oral argument, Defendant made clear his constitutional challenge to SBM was limited to
the facts of the instant case and that he was not pressing a facial constitutional challenge to the entire
statutory SBM regime. We therefore limit our decision to the as-applied argument advanced by this
appeal.

 -3-
 STATE V. GRIFFIN

 Opinion of the Court

sentenced for a reportable sex offense as defined by N.C. Gen. Stat. § 14-208.6(4) and

therefore could be subject to SBM if ordered by a court. Id.

 Defendant appeared before the trial court at a “bring-back” hearing in August

2016, where a “Revised STATIC-99 Coding Form” (“Static-99”), prepared by the

Division of Adult Correction and Juvenile Justice and designed to estimate the

probability of recidivism, was entered into evidence. Id. According to the Static-99,

Defendant presented a “moderate-low” risk, the second lowest of four possible

categories. Id.

 The State called Defendant’s parole officer as a witness, who testified that

Defendant failed to complete the SOAR program but had not violated any terms of

his post-release supervision. Id. The officer also described the physical

characteristics and operation of the SBM device. Id. The State did not introduce any

evidence regarding how it would use the SBM data or whether SBM would be effective

in protecting the public from potential recidivism by Defendant. Id.

 After taking the matter under advisement, the trial court entered a written

order imposing SBM on Defendant for thirty years. Id. at ___, 818 S.E.2d at 338-39.

That order included the following findings of fact and conclusion of law:

 1. The defendant failed to participate in and[/]or complete
 the SOAR program.

 2. The defendant took advantage of the victim’s young age
 and vulnerability: the victim was 11 years old [while] the
 defendant was 29 years old.

 -4-
 STATE V. GRIFFIN

 Opinion of the Court

 3. The defendant took advantage of a position of trust; the
 defendant was the live-in boyfriend of the victim’s mother.
 The family had resided together for at least four years and
 [defendant] had a child with the victim’s mother.

 4. Sexual abuse occurred over a three year period of time.

 The court has weighed the Fourth Amendment right of the
 defendant to be free from unreasonable searches and
 seizures with the publics [sic] right to be protected from sex
 offenders and the court concludes that the publics [sic]
 right of protection outweighs the “de minimis” intrusion
 upon the defendant’s Fourth Amendment rights.

Id. at ___, 818 S.E.2d at 339.

 Based on the above record, we held in Griffin I that “because the State failed

to present any evidence that SBM is effective to protect the public from sex offenders,

this Court’s decision in Grady II compels us to reverse the trial court’s order requiring

Defendant to enroll in SBM for thirty years.” Id. at ___, 818 S.E.2d at 342.

 II. ANALYSIS

 We re-evaluate Defendant’s appeal as directed by the Supreme Court,

considering Grady III and determining whether that decision impacts our prior

reversal of the SBM order. Because Grady III modifies and affirms Grady II, we look

to both opinions to discern the scope, effect, and import of Grady III. We begin, then,

with a review of Grady II.

 -5-
 STATE V. GRIFFIN

 Opinion of the Court

 A. Grady II

 In Grady II, this Court determined whether lifetime SBM imposed on an

unsupervised recidivist defendant was “ ‘reasonable—when properly viewed as a

search[.]’ ” Grady II, ___ N.C. App. at ___, 817 S.E.2d at 21 (quoting Grady v. North

Carolina, 575 U.S. 306, 310, 191 L. Ed. 2d 459, 463 (2015)). We ultimately held that

Mr. Grady’s diminished privacy expectations did not render lifetime SBM reasonable

under the totality of the circumstances. Id. at ___, 817 S.E.2d at 28.

 Our analysis in Grady II focused on four things: (1) the defendant’s expectation

of privacy as a convicted sex offender subject to registration, id. at ___, 817 S.E.2d at

23-25; (2) the physical intrusion of the SBM monitor itself, id. at ___, 817 S.E.2d at

25; (3) SBM’s continuous intrusion into the defendant’s locational privacy interest,

id. at ___, 817 S.E.2d at 25-26; and (4) the State’s interest in monitoring the defendant

and whether lifetime SBM served that interest, id. at ___, 817 S.E.2d at 27-28. 2

 As to the first circumstance, we held that registration on the sex offender

registry meant the “[d]efendant’s expectation of privacy [was] . . . appreciably

diminished as compared to law-abiding citizens.” Id. at ___, 817 S.E.2d at 24. We

next explained that the impact of the ankle monitor used to conduct SBM was “more

inconvenient than intrusive, in light of [the] defendant’s diminished expectation of

 2 We reviewed the issue under a “general Fourth Amendment approach based on diminished
expectations of privacy” and declined to examine whether the SBM order constituted a special needs
search, holding that the State’s failure to raise a special needs argument before the trial court resulted
in its waiver on appeal. Id. at ___, 817 S.E.2d at 23 (citations and quotation marks omitted).

 -6-
 STATE V. GRIFFIN

 Opinion of the Court

privacy as a convicted sex offender.” Id. at ___, 817 S.E.2d at 25. We also observed,

however, that SBM’s “continuous, warrantless search of defendant’s location through

the use of GPS technology . . . . is ‘uniquely intrusive’ as compared to other searches

upheld by the United States Supreme Court.” Id. at ___, 817 S.E.2d at 25-26 (quoting

Belleau v. Wall, 811 F.3d 929, 940 (7th Cir. 2016) (Flaum, J., concurring)). Lastly,

we recognized “the State’s compelling interest in protecting the public, particularly

minors, from dangerous sex offenders[,]” id. at ___, 817 S.E.2d at 27, but nonetheless

held the SBM search unreasonable because “the State failed to present any evidence

of its need to monitor defendant, or the procedures actually used to conduct such

monitoring in unsupervised cases.” Id. at ___, 817 S.E.2d at 28. In announcing that

holding, we stressed that it was strictly “limited to the facts of this case.” Id.

 B. Grady III

 Our decision in Grady II was modified and affirmed by our Supreme Court in

Grady III. In a comprehensive opinion, the Supreme Court reviewed every aspect of

this Court’s analysis in Grady II and identified two points of express disagreement:

(1) “the Court of Appeals erroneously limited its holding to the constitutionality of

the program as applied only to Mr. Grady, when our analysis of the reasonableness

of the search applies equally to anyone in Mr. Grady’s circumstances[,]” Grady III,

372 N.C. at 510-11, 831 S.E.2d at 546 (citation omitted); and (2) the Supreme Court

“[dis]agree[d] with the Court of Appeals that [the SBM ankle monitor’s] physical

 -7-
 STATE V. GRIFFIN

 Opinion of the Court

restrictions, which require defendant to be tethered to a wall for what amounts to one

month out of every year, are ‘more inconvenient than intrusive.’ ” Id. at 535-36, 831

S.E.2d at 562-63 (citations omitted).3 It then modified the holding in Grady II to

expand its application “equally to anyone in defendant’s circumstances,” rendering

SBM monitoring under N.C. Gen. Stat. §§ 14-208.40A(c) and 14-208.40B(c)

unconstitutional as applied to any registered sex offenders who are otherwise not

under State supervision but would be subject to SBM solely on the basis of recidivism.

Id. at 550-51, 831 S.E.2d at 572.

 Despite broadening Grady II’s impact, Grady III examined largely the same

factors: (1) the nature of the defendant’s legitimate privacy interests in light of his

status as a registered sex offender, id. at 527-34, 831 S.E.2d at 557-61; (2) the

intrusive qualities of SBM into the defendant’s privacy interests, id. at 534-38, 831

S.E.2d at 561-64; and (3) the State’s legitimate interests in conducting SBM

monitoring and the effectiveness of SBM in addressing those interests, id. at 538-45,

831 S.E.2d at 564-68.

 The Supreme Court first concluded that SBM intruded upon the defendant’s

privacy interests in his physical person, id. at 527-28, 831 S.E.2d at 557, his home,

id. at 528, 831 S.E.2d at 557, and his location and movements, id. at 528-29, 831

 3 Although the Supreme Court did not directly contradict this Court’s determination that the
State had failed to preserve a “special needs” analysis of the SBM program on appeal, it did address
the question of whether a special need was present on the merits and concluded that “the ‘special
needs’ doctrine is not applicable here.” Id. at 527, 831 S.E.2d at 557 (citations omitted).

 -8-
 STATE V. GRIFFIN

 Opinion of the Court

S.E.2d at 557-58. Though the defendant was a convicted felon and did have to

register as a sex offender, the Supreme Court held those facts diminished his privacy

interests only in contexts distinct from SBM. See id. at 531, 831 S.E.2d at 559 (“None

of the conditions imposed by the registry implicate an individual’s Fourth

Amendment ‘right . . . to be secure in [his] person[ ]’ or his expectation of privacy ‘in

the whole of his physical movements.’ ” (quoting Carpenter v. United States, 585 U.S.

___, ___, 201 L. Ed. 2d 507, 523 (2018)). It also drew a contrast between Mr. Grady

and defendants subject to probation or post-release supervision:

 Even if defendant has no reasonable expectation of privacy
 concerning where he lives because he is required to register
 as a sex offender, he does not thereby forfeit his expectation
 of privacy in all other aspects of his daily life. This is
 especially true with respect to unsupervised individuals
 like defendant who, unlike probationers and parolees, are
 not on the “continuum of possible [criminal] punishments”
 and have no ongoing relationship with the State.

Id. at 531, 831 S.E.2d at 559-60 (quoting Griffin v. Wisconsin, 483 U.S. 868, 874, 97

L. Ed. 2d 709, 718 (1987)). The Supreme Court summarized this portion of its

analysis by concluding, “except as reduced for possessing firearms and by providing

certain specific information and materials to the sex offender registry, defendant’s

constitutional privacy rights, including his Fourth Amendment expectations of

privacy, have been restored.” Id. at 534, 831 S.E.2d at 561.

 Turning to the intrusive nature of SBM, the Supreme Court noted that

recidivists who are required to undergo SBM do not receive the benefit of judicial

 -9-
 STATE V. GRIFFIN

 Opinion of the Court

review of the search’s necessity prior to or following its imposition, and “the fact that

North Carolina’s mandatory SBM program involves no meaningful judicial role is

important in the analysis of the constitutionality of the program.” Id. at 535, 831

S.E.2d at 562.4 It then explained that SBM constituted a significant invasion of Mr.

Grady’s physical privacy, as “Mr. Grady . . . must not only wear the half-pound ankle

monitor at all times and respond to any of its repeating voice messages, but he also

must spend two hours of every day plugged into a wall charging the ankle monitor.”

Id. The Supreme Court held that the State’s ability to track Mr. Grady’s movements

was likewise a substantial intrusion: “mandatory imposition of lifetime SBM on an

individual in defendant’s class works a deep, if not unique, intrusion upon that

individual’s protected Fourth Amendment interests.” Id. at 538, 831 S.E.2d at 564.

 In the final step of its analysis, the Supreme Court looked to the State’s

interests in imposing SBM and “ ‘consider[ed] the nature and immediacy of the

governmental concern at issue here, and the efficacy of this means for meeting it.’ ”

Id. (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 660, 132 L. Ed. 2d 564,

579 (1995)). It identified several compelling interests promoted by the State, namely

protecting the public from sex offenders through solving crimes, reducing recidivism,

and deterring criminality. Id. at 538-39, 543, 831 S.E.2d at 564-65, 567. Despite

 4 The Supreme Court noted that those subject to lifetime SBM do have the opportunity to
petition for termination of SBM in front of the Post-Release Supervision and Parole Commission. Id.
at 534, 831 S.E.2d at 562. It also held that such an opportunity was not equivalent to or a substitute
for judicial review of a warrantless search. Id. at 534-35, 831 S.E.2d at 562.

 - 10 -
 STATE V. GRIFFIN

 Opinion of the Court

acknowledging the legitimacy of these interests, the Supreme Court echoed the

efficacy-based decision in Grady II and wrote that “a problem justifying the need for

a warrantless search cannot simply be assumed; instead, the existence of the problem

and the efficacy of the solution need to be demonstrated by the government.” Id. at

540-41, 831 S.E.2d at 566. It further noted that reliance on “unsupported

assumptions . . . [does not] suffice to render an otherwise unlawful search

reasonable.” Id. at 543 n.20, 831 S.E.2d at 567 n.20. Given that the State failed to

introduce any evidence that SBM is effective in protecting the public against sex

offenders, the Supreme Court refused to “simply assume that the program serves its

goals and purposes when determining whether the State’s interest outweighs the

significant burden that lifetime SBM imposes on the privacy rights of recidivists

subjected to it[.]” Id. at 544, 831 S.E.2d at 568. And, because “the State . . . simply

failed to show how monitoring [a recidivist] individual’s movements for the rest of his

life would deter future offenses, protect the public, or prove guilt of some later

crime[,]” the Supreme Court held that “the State has not met its burden of

establishing the reasonableness of the SBM program under the Fourth Amendment

balancing test required for warrantless searches.” Id.

 The Supreme Court did not, however, treat the lack of evidence that SBM is

effective as a dispositive threshold issue, as opposed to one factor among the totality

of the circumstances. See id. at 543, 831 S.E.2d at 567 (“The State’s inability to

 - 11 -
 STATE V. GRIFFIN

 Opinion of the Court

produce evidence of the efficacy of the lifetime SBM program in advancing any of its

asserted legitimate State interests weighs heavily against a conclusion of

reasonableness here.” (emphasis added)).

 Following the above analysis, the Supreme Court reached its ultimate holding:

not only was mandatory lifetime SBM under N.C. Gen. Stat. §§ 14-208.40A(c) and 14-

208.40B(c) unconstitutional as applied to Mr. Grady, it was also unconstitutional as

applied to all unsupervised defendants who received mandatory lifetime SBM solely

on the basis of recidivism. Id. at 550-51, 831 S.E.2d at 572. In other words, because

SBM monitoring of such a defendant on the basis of recidivism alone would never be

reasonable under the totality of the circumstances, this Court erred in limiting its

holding in Grady II. See id. at 545, 831 S.E.2d at 568 (“In these circumstances, the

SBM program cannot constitutionally be applied to recidivists in Grady’s category on

a lifetime basis as currently required by the statute.”). The Supreme Court was

mindful to restrict this quasi-facial element of its decision to the specific facts before

it:

 The category to which this holding applies includes only
 those individuals who are not on probation, parole, or post-
 release supervision; who are subject to lifetime SBM solely
 by virtue of being recidivists as defined by the statute; and
 who have not been classified as a sexually violent predator,
 convicted of an aggravated offense, or are adults convicted
 of statutory rape or statutory sex offense with a victim
 under the age of thirteen.

Id. at 545, 831 S.E.2d at 568-69.

 - 12 -
 STATE V. GRIFFIN

 Opinion of the Court

 C. Grady III’s Effect on This Appeal

 Defendant’s circumstances place him outside of the facial aspect of Grady III’s

holding; he is not an unsupervised recidivist subject to mandatory lifetime SBM, but

is instead a felon on post-release supervision who was convicted of an offense

involving the physical, mental, or sexual abuse of a minor. Defendant, then, is subject

to SBM under N.C. Gen. Stat. § 14-208.40(a)(2), not subsection (a)(1) as in the Grady

cases, and he therefore received the benefit of a risk assessment and judicial

determination of whether and for how long he would be subject to the SBM search.

See N.C. Gen. Stat. §§ 14-208.40A(d)-(e) (2019) (providing that defendants subject to

SBM under N.C. Gen. Stat. § 14-208.40(a)(2) must receive a risk assessment before

the trial court “determines . . . the offender does require the highest possible level of

supervision and monitoring” and imposes SBM for “a period of time to be specified by

the court”). Plainly, then, Grady III’s holding does not directly determine the outcome

of this appeal.

 Although Grady III does not compel the result we must reach in this case, its

reasonableness analysis does provide us with a roadmap to get there. As conceded

by the State at oral argument, Grady III offers guidance as to what factors to consider

in determining whether SBM is reasonable under the totality of the circumstances.

We thus resolve this appeal by reviewing Defendant’s privacy interests and the

nature of SBM’s intrusion into them before balancing those factors against the State’s

 - 13 -
 STATE V. GRIFFIN

 Opinion of the Court

interests in monitoring Defendant and the effectiveness of SBM in addressing those

concerns. See Grady III, 372 N.C. at 527, 534, 538, 831 S.E.2d at 557, 561, 564.

Before doing so, however, we must address whether that analysis is conducted

pursuant to the “special needs” doctrine or upon a diminished expectation of privacy

as was done in Grady III. See id. at 524-27, 831 S.E.2d at 555-57.

1. Special Needs v. Diminished Expectations of Privacy

 In its initial briefing to this Court, the State argued that SBM serves a special

need in this case. However, we held in Griffin I that the State’s failure to assert a

special need before the trial court waived that argument on appellate review. Griffin

I, ___ N.C. App. at ___ n.5, 818 S.E.2d at 340 n.5. We reaffirm our holding that the

State’s failure to advance a special need before the trial court waived its application

on appeal, and, even assuming arguendo that this argument was not waived, we

conclude that it is inapplicable to the SBM order appealed here.

 Defendant is subject to post-release supervision until June of this year. As

recognized in Grady III, a supervisory relationship between a defendant and the

State may give rise to a special need for warrantless searches. 372 N.C. at 526, 831

S.E.2d at 556 (rejecting the State’s special needs argument partly on the basis that

Mr. Grady was unsupervised and was “not [in] a situation . . . in which there is any

‘ongoing supervisory relationship’ between defendant and the State” (quoting Griffin

 - 14 -
 STATE V. GRIFFIN

 Opinion of the Court

v. Wisconsin, 483 U.S. at 879, 97 L. Ed. 2d at ___)). The thirty years of SBM at issue

in this appeal is unrelated to the State’s post-release supervision of Defendant.

 As acknowledged by counsel at oral argument, all defendants convicted of a

reportable conviction or the sexual abuse of a minor who receive post-release

supervision must submit to SBM as a condition of their release. See N.C. Gen. Stat.

§ 15A-1368.4(b1)(7) (2019) (establishing SBM monitoring as a required condition of

post-release supervision for registered sex offenders and those convicted of sexual

abuse of a minor).

 Defendant has not contested the imposition of SBM as a condition of post-

release supervision but has instead appealed an entirely different search lasting six

times the length of his supervisory relationship with the State. In light of the fact

that the State’s special need to monitor Defendant through SBM can already be met

as a term of his release—and given that Defendant has not contested the imposition

of SBM in connection with his post-release supervision—we analyze the separate,

thirty-year SBM search imposed independent of his supervised release under a

diminished expectation of privacy exception to the Fourth Amendment’s warrant

requirement rather than as a special needs search. Cf. Grady III, 372 N.C. at 526-

27, 831 S.E.2d at 556-57 (“[T]he primary purpose of SBM is to solve crimes. . . .

Because the State has not proffered any concerns other than crime detection, the

 - 15 -
 STATE V. GRIFFIN

 Opinion of the Court

special needs doctrine is not applicable here.” (citations and quotation marks

omitted)).

2. Defendant’s Privacy Interests

 Defendant, as a registered sex-offender subject to post-release supervision,

does have a diminished expectation of privacy in some respects. His appearance on

the sex offender registry does not mean, however, that his rights to privacy in his

person, his home, and his movements are forever forfeit. Id. at 534, 831 S.E.2d at

561. And while those rights may be appreciably diminished during his five-year term

of post-release supervision, that is not true for the remaining 25 years of SBM

imposed here. Treating this search on its own terms, Defendant’s “constitutional

privacy rights, including his Fourth Amendment expectations of privacy, [will] have

been restored” one-sixth of the way into the warrantless search at issue. Id.

Defendant, then, will enjoy appreciable, recognizable privacy interests that weigh

against the imposition of SBM for the remainder of the thirty-year term.

3. Intrusive Nature of SBM

 Grady III made several observations concerning the intrusive nature of SBM,

and those same observations generally apply here. For example, the physical

qualities of the monitoring device used in this case appear largely similar to those in

Grady III, and thus meaningfully conflict with Defendant’s physical privacy rights.

Id. at 535-37, 831 S.E.2d at 562-63. And, as recognized in Grady III, SBM’s ability to

 - 16 -
 STATE V. GRIFFIN

 Opinion of the Court

track Defendant’s location is “uniquely intrusive,” id. at 537, 831 S.E.2d at 564

(citation and quotation marks omitted), and thus weighs against the imposition of

SBM.

 Despite the above parallels, the intrusion in this case is different from that in

Grady III in some respects. Defendant is subject to thirty years of warrantless

intrusions, not a lifetime, and, unlike recidivists, was ordered to submit to that term

of SBM after a risk assessment and a determination by the trial court that he

“require[s] the highest possible level of supervision and monitoring[.]” N.C. Gen.

Stat. § 14-208.40A(e). These differences, however, do not sufficiently tilt the scales

in favor of SBM in this case. The thirty-year term of SBM imposed here, though less

than a lifelong term, nonetheless constitutes a significantly lengthy and burdensome

warrantless search. Although Defendant did have the benefit of judicial review in

determining whether SBM should be imposed, persons subject to SBM for a term of

years do not have the opportunity to later petition the Post-Release Supervision and

Parole Commission for relief. “In [this] aspect, the intrusion of SBM on Defendant in

this case is greater than the intrusion imposed in Grady II [and Grady III], because

unlike an order for lifetime SBM, which is subject to periodic challenge and review,

an order imposing SBM for a period of years is not subject to later review[.]” Griffin

I, ___ N.C. App. at ___, 818 S.E.2d at 341 (citing N.C. Gen. Stat. § 14-208.43). Thus,

even when these differences from Grady III are taken into account, the intrusive

 - 17 -
 STATE V. GRIFFIN

 Opinion of the Court

nature of SBM as implemented in this case weighs against the reasonableness of the

warrantless search ordered below.

4. The State’s Interests

 Our case law is clear that the State has advanced legitimate interests in favor

of SBM. See, e.g., Grady III, 372 N.C. at 543, 831 S.E.2d at 568 (“[T]he State’s

asserted interests here are without question legitimate[.]”). Those interests, as

acknowledged in Grady III and Griffin I, include protecting the public from sex

offenders, Griffin I, ___ N.C. App. at ___, 818 S.E.2d at 341, reducing recidivism, id.,

solving crimes, Grady III, 372 N.C. at 542, 831 S.E.2d at 567, and deterring

criminality, id. at 543, 831 S.E.2d at 567. But, in addition to showing valid objectives,

“the State bears the burden of proving the reasonableness of a warrantless search”

which, in the context of SBM, includes “the burden of coming forward with some

evidence that its SBM program assists in apprehending sex offenders, deters or

prevents new sex offenses, or otherwise protects the public.” Id. at 543-44, 831 S.E.2d

at 568 (citation omitted). The State’s failure to produce any evidence in this regard

“weighs heavily against a conclusion of reasonableness[.]” Id. at 543, 831 S.E.2d at

567.

 The State conceded at oral argument that it did not introduce any record

evidence before the trial court showing SBM is effective in accomplishing any of the

State’s legitimate interests. See also Griffin I, ___ N.C. App. at ___, 818 S.E.2d at 340

 - 18 -
 STATE V. GRIFFIN

 Opinion of the Court

(noting the absence of record evidence on efficacy). Although the State proffered

testimony that Defendant had betrayed the minor victim’s trust and then failed to

complete the SOAR program in prison, “[t]he SBM order did not reflect in any finding

or conclusion whether the trial court determined that Defendant’s betrayal of trust

or failure to complete or participate in SOAR increased his likelihood of recidivism.”

Id. at ___, 818 S.E.2d at 342.

 The Static-99 produced by the State disclosing a “moderate-low risk” of

reoffending is, standing alone, “insufficient to support the imposition of SBM on a sex

offender.” Id. (citing State v. Kilby, 198 N.C. App. 363, 370, 679 S.E.2d 430, 434

(2009); State v. Thomas, 225 N.C. App. 631, 634, 741 S.E.2d 384, 387 (2013)). And,

as explained above, the State’s interest in monitoring Defendant via SBM during

post-release supervision is already accomplished by a mandatory condition of post-

release supervision imposing that very thing. See N.C. Gen. Stat. § 15A-

1368.4(b1)(7). The State, therefore, failed to carry its burden to produce evidence

that the thirty-year term of SBM imposed in this case is effective to serve legitimate

interests.

5. Reasonableness of SBM Under the Totality of These Circumstances

 As explained above, the circumstances reveal that Defendant has appreciable

privacy interests in his person, his home, and his movements—even if those interests

are diminished for five of the thirty years that he is subject to SBM. Those privacy

 - 19 -
 STATE V. GRIFFIN

 Opinion of the Court

interests are, in turn, substantially infringed by the SBM order imposed in this case.

Taken together, these factors caution strongly against a conclusion of reasonableness,

and they are not outweighed by evidence of any legitimate interest served by

monitoring Defendant given the State’s failure to meet its burden showing SBM’s

efficacy in accomplishing the State’s professed aims. In short, the totality of the

circumstances discloses that the order for thirty years of SBM in this case constitutes

an unreasonable warrantless search in violation of the Fourth Amendment. We

therefore hold, consistent with the balancing test employed in Grady III, that the

imposition of SBM under N.C. Gen. Stat. § 14-208.40(a)(2) as required by the trial

court’s order is unconstitutional as applied to Defendant and must be reversed. See

State v. Greene, ___ N.C. App. ___, ___, 806 S.E.2d 343, 345 (2017) (holding that when

the State had the opportunity but failed to introduce evidence in showing the

reasonableness of SBM, reversal—rather than vacatur and remand—is the

appropriate disposition).

 III. CONCLUSION

 We reaffirm our prior disposition under Griffin I, as that result is consistent

with the totality of the circumstances test as employed by our Supreme Court in

Grady III. Because the order imposing thirty years of SBM is an unreasonable

warrantless search of Defendant in violation of the Fourth Amendment, we reverse

the trial court’s order.

 - 20 -
 STATE V. GRIFFIN

 Opinion of the Court

REVERSED.

Judge YOUNG concurs.

Judge BRYANT concurs in the result only.

 - 21 -